UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Adam Sorkin, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          - against -<br><br>The Kroger Co.,<br><br>                    Defendant | 1:23-cv-14916<br><br><br><br>Class Action Complaint<br><br><br>Jury Trial Demanded |

Plaintiff Adam Sorkin ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.      The Kroger Co. ("Defendant") sells eggs described as "Farm Fresh" ("Product") under its Roundy's brand at stores including Mariano's Fresh Market.









2. These "Farm Fresh" eggs are sold in Mariano's stores and marketed on its website.



3. When clicking on the links of the first four Roundy's eggs, potential purchasers will see they are described as "Farm Fresh."



4. The ethical treatment of farm animals is an increasing concern for Americans.

5. "Farm Fresh" evokes favorable impressions in consumers, such as an image of a farmer getting up with roosters to gather warm eggs from straw nests and rush them to the local general store.

6. "Farm Fresh" directly and indirectly tells purchasers the eggs they are buying were produced by hens living a natural life on a farm.

7. According to experts in animal welfare, however, "farm fresh" "literally means nothing."[1]

8. "Farm Fresh" is misleading because eggs labeled with this term are obtained from battery cage systems where laying hens lack minimal and/or meaningful access to the outdoors.

9. "Farm Fresh" is misleading because the eggs labeled with this term are not produced

---

[1] https://www.npr.org/sections/thesalt/2014/12/23/370377902/farm-fresh-natural-eggs-not-always-what-they-re-cracked-up-to-be

4

on anything consumers would consider a farm, but in large-scale industrial confinement.

10. In such systems, hens live short lives on a wire mesh floor in racks, unable to spread their wings.

11. The battery cages they live in are usually about 18 by 20 inches wide with up to 11 birds per cage.

12. For example, a white leghorn has a wingspan of 32 inches, larger than the area it will be confined in.

13. According to animal behaviorists and welfare organizations, these environments "prevent hens from engaging in critical natural behaviors such as dust bathing, perching, scratching, walking, laying eggs in a nest, and spreading their wings," which they could engage in on actual farms.

14. Not only is this cruel to the hens, "Food safety, consumer protection, and public health organizations have opposed the caging of egg-laying chickens, citing concerns related to increased risk of salmonella and other diseases."

15. Labeling claims related to animal welfare and production methods like "farm fresh" are particularly susceptible to misleading consumers due to asymmetric information.

16. These claims are almost impossible to verify by sensory perception at or after the time of purchase.

17. Unlike "search" goods which relate to a product's characteristics, such as price, size, and color, which a buyer will observe before purchasing, "credence" goods have qualities which cannot be observed.

18. This is because there is no difference between the appearance or taste of eggs depending on if they were from hens on a real farm or a caged facility.

19. The Egg Products Inspection Act ("EPIA") assures consumers that eggs and egg products are properly labeled and packaged. 21 U.S.C. 1031 *et seq*.

20. The EPIA authorizes States to enact parallel laws related to egg production and labeling.

21. This State's legislature adopted the Illinois Egg and Egg Products Act to "regulate the…labeling, and distribution of eggs and egg products…to prevent the movement or sale for human food of eggs and egg products which are adulterated or misbranded." 410 ILCS 615/1 *et seq*. and 410 ILCS 615/2.

22. These laws require that eggs sold at retail not be advertised in a way that is misleading or deceptive. 410 ILCS 615/6.

23. Though eggs are authorized to be labeled as "fresh eggs" if they meet the requirements of Grade A, describing eggs as "farm fresh" is not authorized. 410 ILCS 615/7.

24. An independent study from Data for Progress, titled "Cracking Down on Kroger" ("Report") confirmed that its customers are misled by eggs sold under its store brands, like Roundy's, which are labeled as "Farm Fresh."

25. This is because Kroger purchasers understand this term as equivalent to "cage free," when it is not.[2]

26. Kroger customers indicated that labeling eggs as "farm fresh" even though they were produced by confined hens was misleading to them when they learned the hens were not raised on

---

[2] Letter Re: Kroger Caged Chicken Eggs, Ag No. 2023-0371680-A, Michigan Attorney General Dana Nessel to Rodney McMullen, CEO, The Kroger Co., Mar. 23, 2023 citing Grace Adcox and Julia Jeanty, Data For Progress, "Cracking Down on Kroger," Feb. 2023; AG Press Release, Michigan Department of Attorney General, Department of the Attorney General Sends Letter to Kroger Co. Urging Clear, Truthful Advertising of Cage-Free Eggs, Mar. 31, 2023; Kroger purchasers and customers refers to those who shop at Kroger affiliates and subsidiaries which sell eggs labeled as "Farm Fresh," among other terms.

farms, as consumers understand farms.

27. Most Kroger egg purchasers want truthful information as to the living conditions of the hens producing the eggs they bought, instead of terms like "farm fresh" which are misleading.

28. Relying on the Report, the Michigan Attorney General told Kroger "to add clear signage to your stores to help consumers understand which eggs, exactly, came from caged chickens and which did not, so as to help them be able to make informed choices on how they spend their hard-earned dollars."

29. As a result of the false and misleading representations, Roundy's eggs labeled as "Farm Fresh" are sold at premium price, approximately not less than $1.49 for a dozen large white eggs, excluding tax and sales.

## Jurisdiction and Venue

30. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

31. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

32. Plaintiff is a citizen of Illinois.

33. Defendant The Kroger Co. is an Ohio corporation with a principal place of business in Ohio.

34. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

35. The members of the class Plaintiff seeks to represent are more than 100, because Roundy's products are sold at over 40 Mariano's in Illinois, a market of millions of consumers.

36. Given that eggs are a supermarket staple, the number of purchasers are likely in the

hundreds of thousands.

37. Venue is in this District with assignment to the Eastern Division because Plaintiff resides in Cook County and a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's purchase, consumption and/or use of the Product, reliance on the representations and omissions, and/or subsequent awareness they were false and misleading.

## Parties

38. Plaintiff Andrew Sorkin is a citizen of Cook County, Illinois.

39. Defendant The Kroger Co. is an Ohio corporation with a principal place of business in Ohio.

40. Defendant is the largest grocer in the United States.

41. Roundy's is a wholly owned subsidiary of Kroger.

42. Roundy's operates 149 grocery stores under the banners of Pick 'n Save and Metro Market in Wisconsin and Mariano's in Illinois.

43. Pick 'n Save has over 100 locations in Wisconsin and Mariano's has over 40 locations in Illinois.

44. Roundy's products are sold at Pick 'n Save, Metro Market and Mariano's.

45. Though Kroger recently entered into an agreement to divest itself of Mariano's in advance of regulatory approval of its merger with Albertson's, the completion of this transaction is not scheduled to occur until early 2024.[3]

46. While Kroger sells leading national brands, it sells many products under its private

---

[3] https://www.cswg.com/news/cs-wholesale-grocers-enters-into-a-definitive-agreement-to-purchase-413-stores-available-from-the-kroger-and-albertsons-merger/

label Roundy's brand.

47. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

48. Products under the Roundy's brand have an industry-wide reputation for quality and value.

49. In releasing products under the Roundy's brand, Defendant's foremost criteria was high-quality products equal to or better than national brands.

50. That Roundy's products met this high bar was or would be proven by focus groups, rating them above their name brand equivalents.

51. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

52. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

53. Plaintiff is part of the majority of Americans who care how animals are treated when they are used for production of food.

54. Plaintiff purchased Roundy's eggs labeled and packaged as "Farm Fresh" at Mariano's locations in Cook County between October 2020 and the present, among other times.

55. Plaintiff believed "farm fresh" meant eggs produced by hens living on farms, with open green space, grass and straw.

56. Plaintiff relied on the term "Farm Fresh" when purchasing eggs under the Roundy's brand.

57. Plaintiff did not expect "farm fresh" to describe eggs produced by hens in industrial

confinement, in cages, where they lack access to outdoors and the activities and behaviors they naturally exhibit.

58. Plaintiff believed and expected eggs labeled as "farm fresh" meant they were from hens not confined in cages.

59. Plaintiff is like the majority of Kroger customers who believed "Farm Fresh" meant eggs produced by hens not confined in cages.

60. Plaintiff bought the Product at or exceeding the above-referenced price.

61. Plaintiff will demonstrate how much more buyers like him paid for the eggs labeled as "Farm Fresh" compared to if they were truthfully labeled, through economics, statistics and/or other disciplines.

62. Plaintiff paid more for the Product, would have paid less or not had purchased it had he known the "Farm Fresh" representations and omissions were false and misleading.

63. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

64. Plaintiff chose between Roundy's "Farm Fresh" eggs and others represented similarly, but which did not misrepresent or omit their attributes and qualities.

## Class Allegations

65. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in Illinois who purchased Roundy's eggs at Kroger subsidiaries labeled as "Farm Fresh" during the statutes of limitations for each cause of action alleged.

66. Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

67. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

68. Plaintiff is an adequate representative because his interests do not conflict with other members.

69. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

70. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

71. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

72. Plaintiff expected Roundy's eggs labeled as "Farm Fresh" meant eggs from hens that were not confined in cages and lived on farms, where they had the ability to engage in activities such birds do naturally.

73. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

74. Defendant misrepresented and/or omitted the attributes and qualities of the Product, such as the conditions experienced by the hens that produced eggs which were labeled as "Farm Fresh."

75. Defendant was aware of how consumers value the welfare of animals producing products for consumption.

76. Defendant knew "farm fresh" would mislead its customers to think the eggs were

11

produced by hens not confined in cages, but on farms, as consumers understand the word "farm."

## Unjust Enrichment

77. Defendant obtained benefits and monies because the Product was not from hens living on anything approaching a farm, but from industrial production in confined conditions, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated: October 14, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com