**UNITED STATES DISTRICT COURT FOR
NORTHEN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Adam Sorkin, individually and on behalf of all
others similarly situated,

                    Plaintiff,

      v.

The Kroger Co.,

                  Defendant.

Case No. 1:23-cv-14916

**DEFENDANT THE KROGER CO.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      INTRODUCTION ................................................................................................ 1

II.      BACKGROUND AND ALLEGATIONS .......................................................... 3

     A.      Roundy's Sells Private-Label "Farm Fresh Eggs." ................................... 3

     B.      Mr. Sorkin Files Sues for an Non-Existent Label Statement. ................... 4

     C.      Mr. Sorkin's Counsel Previously Filed, and Dismissed, Nearly Identical Claims Against Kroger, Based on a Non-Existent Product. ................................. 5

III.      MR. SORKIN'S CLAIMS ALL FAIL FOR LACK OF PLAUSIBILITY. .......... 7

     A.      Mr. Sorkin Must, But Cannot, Plead the Labels Would Plausibly Mislead a Reasonable Consumer. ........................................................................... 7

     B.      Mr. Sheehan's Implausible Theory Does Not Survive. ............................ 8

         1.      "Farm Fresh Eggs" Says Nothing About Whether the Egg-Laying Hens Are Caged, and the Statement Is True. ......................................... 9

         2.      Mr. Sorkin's Interpretation Is Implausible Under USDA Guidance. ....... 12

         3.      Context Also Precludes Mr. Sorkin's Label Interpretation. .................... 13

     C.      Mr. Sorkin Fails to Allege the Details of His Purported Purchase with Particularity, as Required To State His Fraud and ICFA Claims. ........................ 14

     C.      Mr. Sorkin Fails to Allege the Intent Required for Fraud. .................................. 15

     D.      Mr. Sorkin's Unjust Enrichment Claim Should Be Dismissed. ........................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Akers v. Costco Wholesale Corp.*,
631 F. Supp. 3d 625 (S.D. Ill. 2022) ..................................................................................8, 15

*Bartosiake v. Bimbo Bakeries USA, Inc.*,
632 F. Supp. 3d 789 (N.D. Ill. 2022) .................................................................................8, 12

*Brownell v. Starbucks Coffee Co.*,
2023 WL 9053058 (N.D.N.Y. Nov. 30, 2023) ....................................................................1, 6

*Chiappetta v. Kellogg Sales Co.*,
2022 WL 602505 (N.D. Ill. 2022) ...........................................................................................15

*DeMaso v. Walmart Inc.*,
655 F. Supp. 3d 696 (N.D. Ill. 2023) ........................................................................................8

*Forsher v. J.M. Smucker Co.*,
612 F. Supp. 3d 714 (N.D. Ohio 2020) ....................................................................................12

*Gardner v. Ferrara Candy Co.*,
2023 WL 4535906 (N.D. Ill. Mar. 22, 2023) ....................................................................10, 13

*Gordon v. Target Corp.*,
2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) .............................................................................6

*Guzman v. Walmart, Inc.*,
2023 WL 4535903 (N.D. Ill. May 15, 2023) ....................................................................1, 3, 5

*Hodorovych v. Dollar General Corp.*,
2023 WL 3602782 (N.D. Ill. May 23, 2023) .....................................................................9, 10

*Ibarolla v. Nutrex Rsch., Inc.*,
2012 WL 5381236 (N.D. Ill. Oct. 31, 2012) ...........................................................................14

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
2009 WL 937256 (N.D. Ill. Apr. 6, 2009) ........................................................................14, 15

*Karlinski v. Costco Wholesale Corp.*,
616 F. Supp. 3d 753 (N.D. Ill. 2022) ............................................................................7, 8, 11

*Long v. The Kroger Co.*,
No. 1:23-cv-01179 (C.D. Ill.) ........................................................................................1, 2, 6

*Matthews v. Polar Corp.*,
   2023 WL 4534543 (N.D. Ill. Mar. 22, 2023)................................................................ *passim*

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ............................................................................................14

*Puri v. Costco Wholesale Corp.*,
   2021 WL 6000078 (N.D. Cal. Dec. 20, 2021) ..................................................................12

*Reyes v. Upfield US Inc.*,
   -- F. Supp. 3d --, 2023 WL 6276685 (S.D.N.Y. Sept. 26, 2023)........................................5

*Rice v. Dreyer's Grand Ice Cream, Inc.*,
   624 F. Supp. 3d 922 (N.D. Ill. 2022) ..............................................................................7, 8

*Richburg v. Conagra Brands*,
   2023 WL 1818561 (N.D. Ill. Feb. 8, 2023) ................................................................12, 13

*Sneed v. Ferrero, U.S.A., Inc.*,
   2023 WL 2019049 (N.D. Ill. Feb. 15, 2023) ....................................................................13

*Tlaib v. Chattem, Inc.*,
   -- F. Supp. 3d --, 2023 WL 5830795 (N.D. Ill. Sept. 8, 2023) ...........................................8

*Troutt v. Mondelez Glob. LLC*,
   637 F. Supp. 3d 606 (S.D. Ill. 2022)......................................................................9, 11, 13

*Van Order v. Hikari Sales U.S.A., Inc.*,
   2023 WL 5336813 (N.D.N.Y. Aug. 18, 2023) ................................................................1, 6

*Weaver v. Champion Petfoods USA Inc.*,
   3 F.4th 927 (7th Cir. 2021) ..............................................................................................11

*Zahora v. Orgain LLC*,
   2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ............................................................8, 10, 12

**State Statutes**

410 ILCS 615/7..........................................................................................................................13

Illinois Consumer Fraud and Deceptive Business Practices Act,
   815 ILCS 505/1, *et seq.*.......................................................................2, 5, 7, 8, 14, 15

**Rules**

General Rules of Pleading
    Rule 8 ................................................................................................................................2
    Rule 9(b) ................................................................................................................2, 14, 15
    Rule 11 ............................................................................................................................1, 6

**Regulations**

21 CFR §§ 179.26, 101.95(c) ........................................................................................12

**Other Authorities**

*Farm*, Mirriam-Webster, https://www.merriam-webster.com/dictionary/farm; ...........................11

*Fresh*, Mirriam-Webster, https://merriam-webster.com/dictionary/fresh ....................................11

## I. INTRODUCTION

This case is a copycat of another failed suit filed by plaintiff Andrew Sorkin's attorney, Spencer Sheehan, based on a variation of the same frivolous claims:  that eggs sold at Kroger stores "tells purchasers the eggs they are buying were produced by hens living a natural life on a farm."  Comp. ¶ 6.  The problem here, as with the prior version of the same complaint (which Mr. Sheehan withdrew after he was served a Rule 11 motion), is that ***the label never makes any such statement.***  Mr. Sheehan and Mr. Sorkin are making it up.  Again.  This has become the nationwide *modus operandi* for Mr. Sorkin's counsel, and it is time to stop.

Mr. Sorkin makes this implausible claim based, rather, on one statement:  "Farm Fresh Eggs."  But this says nothing about a hens living a "natural life" (whatever that means) or hens wandering the pastures.  Farm Fresh means what it says:  they arrived fresh (as in recently) from a farm (as in where the hens lay the eggs).  Mr. Sheehan's and Mr. Sorkin's contrived claims are no less frivolous than the ones he voluntarily dismissed last time, after Kroger filed a motion to dismiss and served a Rule 11 Motion, both highlighting insurmountable and obvious problems, including that they were based on alleged Kroger-brand products that did not exist.  *Long v. The Kroger Co.,* No. 1:23-cv-01179 (C.D. Ill.), filed May 3, 2023 (voluntarily dismissed).  Mr. Sheehan has "gained a fair bit of notoriety" for filing hundreds of repetitive and frivolous mislabeling claims in recent years.  *Guzman v. Walmart, Inc.*, 2023 WL 4535903, at *3 (N.D. Ill. May 15, 2023).  "[N]early all of his cases are dismissed by the court on a motion to dismiss" or are "voluntarily dismissed [by Mr. Sheehan] prior to dispositive motion practice."  *Van Order v. Hikari Sales U.S.A., Inc.*, 2023 WL 5336813, at *9 (N.D.N.Y. Aug. 18, 2023).  Mr. Sheehan was recently sanctioned for filing a complaint "without … reasonable interpretations of the wording on the Product label to support the allegations."  *Brownell v. Starbucks Coffee Co.*, 2023 WL

9053058, at *9 (N.D.N.Y. Nov. 30, 2023).

This action is just the latest in Mr. Sheehan's attempts to escape a bad dispositive ruling, and repeatedly assert baseless claims. Indeed, Mr. Sheehan filed this suit on behalf of Mr. Sorkin just five (5) days after Kroger filed its Motion to Dismiss in *Long*; the complaint is largely recycled from *Long*, and simply incorporates a different product (Roundy's brand eggs), a different plaintiff, and apparently incorporates product images pulled from various websites.

Mr. Sorkin's claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1, *et seq*.; fraud; and unjust enrichment all fail on multiple grounds.

***First,*** Mr. Sorkin does not plausibly allege the labels would deceive a reasonable consumer, dooming all his claims. Rule 8 requires plausibility, and courts in this circuit routinely dismiss where, as here, the plaintiff fails to identify any deceptive statement, and instead relies upon an unreasonable interpretation conjured by the plaintiff or the lawyer that finds no plausible support in the actual label itself. *Matthews v. Polar Corp.*, 2023 WL 4534543, at *9 (N.D. Ill. Mar. 22, 2023) ("Consumers cannot impose content that isn't there, and impute meaning that is not fairly derived from the labeling itself."). Mr. Sorkin does just that, claiming the term "Farm Fresh" Eggs represents eggs that were produced from egg-laying hens living a "natural life" (whatever that is supposed to mean) or "cage-free" housing, despite the label containing no such statements. In the next breath, Mr. Sorkin claims that animal welfare experts found the term "farm fresh" means nothing. Mr. Sorkin's contradictory claims belie the plausibility of his interpretation. The term "Farm Fresh" cannot simultaneously mean nothing and mean eggs laid by hens living a "natural life" freely roaming on a farm. Conversely, Mr. Sorkin instead alleges a far-fetched interpretation of the label statement "Farm Fresh Eggs,"

which is a true statement—the eggs are fresh and come from a farm—and cannot be misleading from the perspective of any reasonable consumer.

**Second,** Mr. Sorkin fails to allege with particularity the facts supporting his common law fraud and ICFA claims, as required to satisfy Rule 9(b). He fails to identify the products product(s) he purchased, and when or where he made such purchases; nor does he allege when, if ever, he saw those alleged misrepresentations. His threadbare allegations fall short.

**Third**, the complaint fails for other claim-specific reasons: For the fraud claim, Mr. Sorkin does not allege the fraudulent intent required to state a fraud claim. For unjust enrichment, it is derivative of and fails with his other claims.

As another judge in this district recently wrote of Mr. Sheehan's repeat, frivolous cases, "The case at hand is yet another spin on an increasingly unpleasant ride. It is time for the carousel to come to a halt." *Guzman*, 2023 WL 4535903, at *2. Kroger respectfully requests that the Court dismiss all of Mr. Sorkin's claims, with prejudice.

## II.  BACKGROUND AND ALLEGATIONS

### A.  Roundy's Sells Private-Label "Farm Fresh Eggs."

Defendant The Kroger Co. is a grocer with retail stores throughout the country. Compl. ¶¶ 1, 41–45. Kroger's subsidiary, Roundy's, operates Mariano's Fresh Market stores in Illinois, where Roundy's sells eggs under its private-label "Roundy's" brand. *See id.* ¶¶ 1, 3, 41, 42. Roundy's private-label eggs include eggs that come from caged hens, as well as eggs that come from hens that are not caged, commonly referred to as "cage free" or "free range" eggs. *Id.* ¶¶ 1–3; RJN Exs. A–B.[1]  Roundy's clearly indicates which eggs come from non-caged hens by

---

[1] The Roundy's eggs labels are incorporated by reference and judicially noticeable, as detailed in the concurrently filed Request for Judicial Notice (RJN).

expressly describing them as "free range."

 

Compl. ¶¶ 1, 3.



RJN Ex. B.  For example, the Simply Roundy's Organic Free Range Large Brown Eggs state on

the label "Produced by hens …raised in a free-range environment."  *Id.*

For Roundy's non-free range eggs, the labels state "Farm Fresh Eggs."  Compl. ¶¶ 1–3.

USDA guidance identifies "Farm Fresh" as an authorized egg label term, where applicable, i.e.,

based on the preservation and processing the eggs have undergone.  RJN Ex. C at 4.  Nothing on

the egg labels, including the term "Farm Fresh," says anything regarding whether the eggs came

from hens in cages, or anything else about how the hens were raised.  Compl. ¶¶ 1–3.

**B.      Mr. Sorkin Sues for a Non-Existent Label Statement.**

On October 14, 2023, Plaintiff Andrew Sorkin filed a complaint with boilerplate

allegations challenging Roundy's private-label eggs.  Mr. Sorkin alleges he purchased Roundy's

eggs at unidentified "Mariano's locations in Cook County between October 2020 and the

present, among other times."  Compl. ¶ 54.  He does not identify the specific egg products he

purchased, how many he purchased, or when or where he made his purchases.  *See id.*

He contends that the egg label term "'Farm Fresh' directly and indirectly tells purchasers the eggs they are buying were produced by hens living a natural life on the farm." *Id.* ¶ 6.  He identifies no other language on the label that says anything about how the egg-laying hens were housed or raised.  Based on this purported reading, he did not "expect 'farm fresh' to describe eggs produced by hens in industrial confinement, in cages…" *Id.* ¶¶ 55, 57.  Mr. Sorkin further alleges that, because of this label statement, he "paid more for the Product," i.e., a "premium" price of around $1.49 for a dozen large white eggs *Id.* ¶¶ 3, 29, 62.  Many of the remaining allegations are copied and pasted from an irrelevant online "report" and letter from the Michigan Attorney General to Kroger discussing in-store signage for eggs.  Compl. ¶¶ 24; RJN Exs. F–G.

Mr. Sorkin asserts three claims on behalf of a putative Illinois consumer class premised on the "farm fresh" label: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*.; (2) fraud; and (3) unjust enrichment.  He seeks compensatory and punitive damages and attorneys' fees.  Compl. at Prayer.

### C. Mr. Sorkin's Counsel Previously Filed, and Dismissed, Nearly Identical Claims Against Kroger, Based on a Non-Existent Product.

Mr. Sorkin's counsel, Spencer Sheehan, has "developed a fair bit of notoriety" as a serial filer of hundreds of frivolous consumer mislabeling cases in recent years.  *Guzman*, 2023 WL 4535903, at *3–4 (N.D. Ill. May 15, 2023) ("Many of [his] complaints have suffered the judicial equivalent of a crash landing, or perhaps an explosion on the launch pad.").  Mr. Sheehan has a well-documented history of filing successive lawsuits "peddl[ing] th[e] [same] theory time and again, in case after case, without much success." *E.g.*, *id.* at *1; *Reyes v. Upfield US Inc.*, -- F. Supp. 3d --, 2023 WL 6276685, at *13 n.5 (S.D.N.Y. Sept. 26, 2023) ("Like a broken record, the Court again notes Plaintiff's counsel has raised the exact same, insufficient argument before this

Court at least three times in the past two years.").[2] "[N]early all of his cases" end in dismissal, either by court order, or his "voluntarily dismiss[al] prior to dispositive motion practice." *Van Order*, 2023 WL 5336813, at *9. Mr. Sheehan was recently sanctioned for these practices, i.e., filing a complaint without "reasonable interpretations of the wording on the Product label to support the allegations." *Brownell*, 2023 WL 9053058, at *9.

This action is just another in Mr. Sheehan's parade through the courts, and the second action he has filed against Kroger asserting near-identical claims. On May 3, 2023, Mr. Sheehan filed a complaint in the Central District of Illinois claiming Kroger's private-label eggs (sold under the "Kroger" brand name) were deceptively labeled, because the terms "Farm Fresh" and "Grade A" purportedly misled consumers to believe the eggs came from cage-free hens. *Long v. The Kroger Co.,* No. 1:23-cv-01179 (C.D. Ill.). But the "Farm Fresh" statement did not actually appear on Kroger brand eggs; and the "Grade A" disclosure is *required* by Illinois law. *Id.*, Dkt. 10 (Motion to Dismiss). On October 13, 2023, Kroger filed a motion to dismiss raising these defects. *Id.* Kroger also served its anticipated Motion for Rule 11 Sanctions, on the grounds that Mr. Sheehan failed to sufficiently investigate the claims before filing the complaint based on a non-existent product label. *Id.* On October 23, Mr. Sheehan voluntarily dismissed.

Just a few months later, Mr. Sheehan recycled his *Long* complaint to file this action, bringing the same claims on virtually the same theory against Kroger, but now based on the eggs sold under the Roundy's brand and with a new plaintiff. To update his complaint for the Roundy's eggs, he apparently did not review the product labels in person, but pulled photos of

---

[2] *Accord Gordon v. Target Corp.*, 2022 WL 836773, at *19 n.11 (S.D.N.Y. Mar. 18, 2022) ("[T]he Court is well aware that Plaintiff's counsel routinely files cases such as these, which bring identical claims, and that they are just as routinely dismissed for failure to state a claim.").

Roundy's eggs from various sources on the internet.[3]  Kroger now moves to dismiss.

### III.    MR. SORKIN'S CLAIMS ALL FAIL FOR LACK OF PLAUSIBILITY.

Mr. Sorkin's claims all fail because for basic lack of plausibility:   the challenged "Farm Fresh" statement is not false or deceptive, as it says nothing about whether the eggs came from caged hens, and Mr. Sorkin's unreasonable interpretation defies Illinois and federal law.

#### A.    Mr. Sorkin Must, But Cannot, Plead the Labels Would Plausibly Mislead a Reasonable Consumer.

Each of Mr. Sorkin's claims—for violation of ICFA, fraud, and unjust enrichment— require showing the product label is deceptive.  *Rice v. Dreyer's Grand Ice Cream, Inc.*, 624 F. Supp. 3d 922, 927–29 (N.D. Ill. 2022) (dismissing ICFA, fraud, and unjust enrichment claim for failure to plead consumer deception); *Matthews v. Polar Corp.*, 2023 WL 4534543, at *9 (N.D. Ill. Mar. 22, 2023) ("[Plaintiff's] failure [to allege a deceptive statement] is a kill shot to the Achilles Heel of the entire case," including fraud and unjust enrichment claims).

To state his claim, Mr. Sorkin must plead facts showing the labels "*plausibly* could deceive a reasonable consumer," not simply conjure up a lawyer's fanciful interpretation. *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 761 (N.D. Ill. 2022) (emphasis added) (dismissing where "plaintiff has not plausibly shown that a reasonable consumer" would adopt plaintiff's label interpretation).

Mr. Sorkin was thus required to "plead 'that the relevant labels are likely to deceive reasonable consumers,' which 'requires a probability that a significant portion of the general

---

[3] Some pictures in Paragraph 1 of the Complaint, for example, appear to have been pulled from: an article on The U.S. Sun webpage (https://www.the-sun.com/money/7131615/egg-purchase-limits-kroger-lidl-groceries/), Reddit (https://www.reddit.com/r/povertyfinance/comments/16yedi7/24_grocery_haul_in_chicago/ and https://www.reddit.com/r/pics/comments/10dmw9t/had_four_doubleyolked_eggs_in_this_batch_since_i/), and a website called Leader Land Academy (https://images.app.goo.gl/MzfWDXC7ECfYATib7).

consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *DeMaso v. Walmart Inc.*, 655 F. Supp. 3d 696, 702 (N.D. Ill. 2023) (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020)). "Relevant circumstances include 'all the information available to consumers and the context in which that information is provided and used." *Tlaib v. Chattem, Inc.*, -- F. Supp. 3d --, 2023 WL 5830795, at *3 (N.D. Ill. Sept. 8, 2023) (quoting *Bell*, 982 F.3d at 477). "On a motion to dismiss, the Court need not accept the conclusion that a reasonable consumer would read the Product's [] label" as plaintiff alleges. *Karlinski*, 616 F. Supp. 3d at 762.

"Where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels," the alleged consumer deception is implausible, and "dismissal on the pleadings may well be justified." *Rice*, 624 F. Supp. 3d at 927 (quoting *Bell*, 982 F.3d at 477); *Bartosiake v. Bimbo Bakeries USA, Inc.*, 632 F. Supp. 3d 789, 796 (N.D. Ill. 2022) ("Plaintiff has not sufficiently pled that a reasonable consumer would be misled by the label, requiring dismissal of the ICFA claim."). Thus, courts routinely dismiss when a plaintiff alleges a label interpretation that is "not fairly derived from the labeling itself." *Matthews v. Polar Corp.*, 2023 WL 4534543, at *9 (N.D. Ill. Mar. 22, 2023) (dismissing on this basis); *Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 632 (S.D. Ill. 2022) (discussing the examples the Seventh Circuit's examples of "fanciful, implausible interpretations," including "consumer interpretation that conflates a label's words [] about components … in the product with a promise of … natural ingredients") (citing *Bell*, 982 F.3d at 377–78). Indeed, "[a] reasonable consumer would not read into the label what is simply not there," and such claims are implausible. *Zahora v. Orgain LLC*, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021).

### B. Mr. Sheehan's Implausible Theory Does Not Survive.

Mr. Sorkin's alleged unreasonable and unsupported interpretation fails to establish

plausible deception, because (1) neither the term "farm fresh eggs" nor the label suggests anything about whether the egg-laying hens were caged, and the term "farm fresh eggs" is true; (2) USDA guidance precludes Mr. Sorkin's interpretation; and (3) labeling context confirms "farm fresh eggs" does not mean free-roaming hens on a pasture.

> **1. "Farm Fresh Eggs" Says Nothing About Whether the Egg-Laying Hens Are Caged, and the Statement Is True.**

*First*, the term "Farm Fresh" does not say or suggest anything about whether the egg came from a hen that was caged or not. Mr. Sorkin and his counsel contend the label deceptively conveys to consumers that the eggs came from a farm where "the farmer get[s] up with roosters to gather warm eggs from straw nests and rush[es] them to the local general store," that "the eggs … were produced by hens living a natural life on a farm" "with open green space, grass and straw," "where they had the ability to engage in activities such birds do naturally," and were "not confined in cages." Compl. ¶¶ 5–6, 55, 58–59, 72. Mr. Sorkin does not (and cannot) point to any statement on the egg label making any such representation, but rather draws this "expectation" based on two straightforward words that mean nothing of the sort: "Farm Fresh." *Id.* But no reasonable consumer would plausibly spin free-roaming hens on a grassy, open field from the term "farm fresh." Rather, "Farm Fresh Eggs" means precisely what it says: the eggs are fresh from a farm, which Mr. Sorkin does not dispute is true.

Mr. Sorkin's attempt to "conjure language that simply does not appear on the Product's label" fails. *Hodorovych v. Dollar General Corp.*, 2023 WL 3602782, at *3 (N.D. Ill. May 23, 2023). Courts reject claims, like those here, that "attempt[] to put words into the manufacturer's mouth" and "impute meaning that is not fairly derived from the labeling itself" as implausible. *Matthews*, 2023 WL 4534543, at *9; *Troutt v. Mondelez Glob. LLC*, 637 F. Supp. 3d 606, 614 (S.D. Ill. 2022) ("Troutt jumped to the conclusion that the 'shortbread' cookies contained butter

without any supporting foundation," as the label "does not contain the word butter").[4]

For example, in *Matthews*, the plaintiff claimed that based on the "lemon" and "Natural Flavors" statements on seltzer water, consumers would not have expected the lemon ingredients to have gone through a manufacturing process to produce flavoring, but the court rejected this theory, explaining the product "never said anything about how it created the lemon flavor." *Matthews*, 2023 WL 4534543, at *8  As the court explained, "Without a representation, there is no misrepresentation."  *Id.*

The same reasoning as in *Matthews* mandates dismissal here.  Mr. Sorkin contends Roundy's eggs misled consumers to believe they came from hens not housed in cages, but like the plaintiff in *Matthews*, he identifies no such representation on the egg labels.  "Without [such] representation, there is no misrepresentation."  *Matthews*, 2023 WL 4534543, at *8.

Rather, Mr. Sorkin rests solely on his unsupported interpretation that "Farm Fresh Eggs" "directly and indirectly tells purchasers *the eggs they are buying were produced by hens living a natural life on a farm*."  Comp. ¶ 6 (emphasis added); *accord* ¶ 59 (plaintiff "believed 'Farm Fresh' meant eggs produced by hens not in cages.").  The label makes no claims whatsoever about hens, where they live, why they live there, how they live—much less statements about "natural life" (whatever that means).  "Farm Fresh Eggs" describes the eggs, not hens, and

---

[4] *Accord Gardner v. Ferrara Candy Co.*, 2023 WL 4535906, at *4 (N.D. Ill. Mar. 22, 2023) ("Gardner is reading far too much into the packaging [in believing the product contains dairy milkfat based on the terms "Creamy" "Caramel"]. The product did not promise a certain level of cream or other milk fat.  In fact, the packaging didn't even promise [it] contained dairy at all."); *Zahora*, 2021 WL 5140504, at *3–5 ("Vanilla Bean Flavor" would not mislead a reasonable consumer to believe the vanilla "flavor was derived exclusively or even mostly from vanilla beans" rather than artificial flavor; "[t]he front label simply states the beverage has a 'Vanilla Bean Flavor'" and says nothing about "natural" flavor); *Hodorovych*, 2023 WL 3602782, at *3 (holding the phrase "numbing relief" would not deceive reasonable consumer to believe it "completely numbs pain receptors" as that statement "simply does not appear" on the label).

merely indicates (1) the eggs are *fresh*, i.e., they were laid within a certain time period and have maintained a certain temperature to ensure freshness, and (2) that they come from a *farm*. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) (label statement that product was made with "fresh regional ingredients" was not misleading as the "food does, in fact, contain [] ingredients that are fresh and sourced regionally"). These are straightforward, simple terms with common understandings, as reflected in Mirriam-Webster. *See Karlinski*, 616 F. Supp. 3d at 763–64 (finding consumer deception claim implausible based on, *inter alia*, dictionary terms). "Farm," refers to a "a plot of land devoted to the raising of animals," *Farm*, Mirriam-Webster, https://www.merriam-webster.com/dictionary/farm; and "fresh" means "having its original qualities unimpaired, i.e., "not stale" or "decayed," *Fresh*, Mirriam-Webster, https://merriam-webster.com/dictionary/fresh. Neither the definition for "farm" or "fresh" includes anything about hens living a natural life, roaming free in open green fields.

Mr. Sorkin does not dispute the term is true—the eggs come from a farm and are fresh. *See generally* Compl. Rather, he contends the word "farm" somehow implies it comes from only one type of farm where hens are raised in a certain manner. But just as the "lemon" or "natural flavors" statement in *Matthews* did not represent the particular "manufacturing process" used to produce the lemon flavoring, "farm fresh" cannot be stretched to mean the hens came from the particular type of farm where hens lived a "natural life," were "not confined in cages," and were permitted "access to outdoors" and "open green space." Compl. ¶¶ 5, 55, 57–58. Mr. Sorkin implausibly and unreasonably "jump[s] to [a] conclusion … without any supporting foundation." *Troutt*, 637 F. Supp. 3d at 614.

In short, Mr. Sorkin attempts to "stretch the meaning" of the words "farm fresh" too far and "impose content that is not" on the label. *Matthews*, 2023 WL 4534543, at *9. Because

"reasonable consumer[s] would not read into the label what is simply not there," *Zahora*, 2021 WL 5140504, at *4, his consumer deception allegations are implausible, and his claims fail.[5]

        **2.**      **Mr. Sorkin's Interpretation Is Implausible Under USDA Guidance.**

*Second*, Mr. Sorkin's interpretation is implausible in light of the U.S. Department of Agriculture's (USDA) authorization of the term "farm fresh" on eggs. Indeed, where a plaintiff's label interpretation is contradicted by federal agency or department guidance, it is "implausible" and the label is "correct as a matter of law." *Richburg v. Conagra Brands*, 2023 WL 1818561, at *7 (N.D. Ill. Feb. 8, 2023) (because FDA does not require chemical at issue to be included as "ingredient," label statements about "ingredients" could not be read to include the chemical, and label was "correct as a matter of law"). Where a plaintiff's theory of consumer deception is implausible, dismissal is "requir[ed]." *Bartosiake*, 632 F. Supp. 3d at 795.

The USDA specifically permits the term "farm fresh" on its certified egg products where they meet enumerated freshness requirements, i.e., they are in their "raw state [that have] not been frozen or subjected to any form of thermal processing or any other form of preservation"— reflecting the determination that reasonable consumers understand "farm fresh" conveys information about freshness and not the egg-laying hens' husbandry. RJN Ex. C at 4 (defining "farm fresh" based on FDA regulations, 21 CFR §§ 179.26, 101.95(c), dealing with preserving freshness of eggs; separately providing "husbandry" label terms). Mr. Sorkin's claim would

---

     [5] Mr. Sorkin's cited sparse and irrelevant study (Compl. ¶¶ 24–28) cannot save his claims because "otherwise facially implausible consumer deception claims cannot be redeemed by survey allegations alone." *Puri v. Costco Wholesale Corp.*, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021). Moreover, the cited "study" does not involve Roundy's eggs or Mariano's customers, and the participants were apparently not shown any actual labels or advertisements, nor provided any context for the questions. RJN Ex. F; *see Forsher v. J.M. Smucker Co.*, 612 F. Supp. 3d 714, 723 (N.D. Ohio 2020) (disregarding alleged consumer survey and articles as "none deal with the Products at issue"). The cited Michigan Attorney General letter also says nothing about Roundy's egg labels, but rather suggests in-store signage. RJN Ex. G; Compl. ¶ 28.

eliminate this USDA-authorized term for any eggs that come from caged hens, contrary to

USDA authority.[6]  As Mr. Sorkin's interpretation is contrary to USDA, it is "implausible," and

the "farm fresh" label is "correct as a matter of law."  *Richburg*, 2023 WL 1818561, at *7.

### 3.    Context Also Precludes Mr. Sorkin's Label Interpretation.

The context in which the eggs are sold also undermines consumer deception.

In evaluating consumer deception, courts "should take into account all the information

available to consumers and the context in which that information is provided and used."  *Troutt*,

637 F. Supp. 3d at 614.  To that end, courts consider what consumers see when they walk down

grocery aisles and look at alternative products.  *See Sneed v. Ferrero, U.S.A., Inc.*, 2023 WL

2019049, at *3 (N.D. Ill. Feb. 15, 2023) (holding no plausible consumer deception as to label

term "cream," after "taking into account the existence of other candies made with artificial cream

and advertised as 'cream'"); *Gardner*, 2023 WL 4535906, at *3–6 (holding label term "creamy"

not deceptive; "[l]ots of things are creamy, but lack dairy. Try walking through the frozen food

aisle in Whole Foods, and check out the selection of dairy-free ice cream.").

Roundy's, like other egg brands, uses the label "free range" on its eggs that come from

uncaged hens, making even more obvious to consumers that eggs *without* the "free range" or

"cage-free" label do not come from uncaged hens.  RJN Exs. A–B.  Indeed, these terms are used

industry-wide to convey to consumers when eggs come from uncaged hens with outdoor access,

as USDA and Illinois guidance reflects.  The USDA identifies "cage-free" and "free range" as

terms used to denote eggs "laid by hens that are able to roam" indoors, and "free range" further

---

[6] Similarly, as Mr. Sorkin alleges, Illinois law expressly permits eggs to bear the term "'fresh eggs', or [] words of similar import" (like "hennery eggs" and "new laid eggs"), so long as they meet the freshness standards of Grade A.  410 ILCS 615/7; RJN Ex. D at 11; Compl. ¶ 23 ("eggs are authorized to be labeled as 'fresh eggs' if they meet the requirements of Grade A").

indicates the hens have "access to outdoors." RJN Ex. C at 5. The Illinois Department of Agriculture, in its consumer guidance, similarly identifies "cage-free," "free-roaming," and "free-range" as label signifiers that the egg-laying hens were not housed in cages. RJN Ex. E. As this guidance demonstrates, "cage free," "free range," "free roaming," and the like are how consumers understand they can identify eggs from uncaged hens; *not by reference to a "farm."*

Mr. Sorkin's interpretation to the contrary is implausible, and all his claims fail.

### C.   Mr. Sorkin Fails to Allege the Details of His Purported Purchase with Particularity, as Required To State His Fraud and ICFA Claims.

Mr. Sorkin also fails to plead his fraud and ICFA claims with particularity as required under Rule 9(b). Because these claims sound in fraud, they are subject to "the heightened pleading standard of [Rule] 9(b)." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). This requires detailing (1) "the 'who, what, when, where, and how' of the fraud,'" *id.*, and (2) "the method by which the misrepresentation was communicated to the plaintiff," *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, 2009 WL 937256, at *2 (N.D. Ill. Apr. 6, 2009). Mr. Sorkin does neither.

First, Mr. Sorkin omits the "what, where, [and] when" of the fraud. The only "details" he provides are in one, vague allegation: "Plaintiff purchased Roundy's eggs labeled and packaged as 'Farm Fresh' at Mariano's locations in Cook County between October 2020 and the present, among other times." Compl. ¶ 54. He fails to identify the product(s) he purchased, when, or any store location, which falls short under Rule 9(b). *Ibarolla v. Nutrex Rsch., Inc.*, 2012 WL 5381236, at *2 (N.D. Ill. Oct. 31, 2012) (allegations that plaintiff "purchased 'one or more' of six named [] products" fails under Rule 9(b)); *In re Sears*, 2009 WL 937256, at *6 (allegations plaintiff purchased sometime over several years "is not a particularized allegation of time").

Second, Mr. Sorkin fails to plead how the purported misrepresentations were

"communicated to him," i.e., where he *saw* them. He does not allege he read or reviewed any egg cartons with the alleged representations before his purchase, or ever. His pleadings fail to satisfy Rule 9(b) on this additional basis. *See In re Sears*, 2009 WL 937256, at \*6 (Rule 9(b) not satisfied where "plaintiffs fail to allege that they saw any particular misrepresentation").

### C.     Mr. Sorkin Fails to Allege the Intent Required for Fraud.

Mr. Sorkin fails to allege the requisite fraudulent intent for his fraud claim.

Mr. Sorkin was required to allege facts establishing Kroger's "knowledge that the [disputed] statement was false" and "intent that the statement induce the plaintiff to act" in compliance with Rule 9(b). *Akers*, 631 F. Supp. 3d at 637. Courts routinely reject vague and "conclusory" allegations of knowledge. *Akers*, 631 F. Supp. 3d at 637 ("the conclusory allegation … that Costco's 'fraudulent intent is evinced by knowledge that the Product was not consistent with its representations,'" fails to sufficiently allege scienter); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at \*8 (N.D. Ill. 2022) (dismissing fraud claim) (same). Mr. Sorkin fails to offer more than basic conclusory allegations, alleging only "Defendant knew 'farm fresh' would mislead its customers." Compl. ¶¶ 74-76. His fraud claim fails on this additional basis.

### D.     Mr. Sorkin's Unjust Enrichment Claim Should Be Dismissed.

Mr. Sorkin's claim for unjust enrichment is duplicative of and fails with his other claims.

"If [an unjust enrichment] claim rests on the same improper conduct alleged in another claim" the claims "stand or fall" together. *Akers*, 631 F. Supp. 3d at 637 (dismissing unjust enrichment claim as duplicative of failed ICFA claim); *Chiappetta*, 2022 WL 602505, at \*9 (unjust enrichment claim "predicated on the same allegations" as implausible ICFA claim "must also fail"). Mr. Sorkin's unjust enrichment claim is based on the same allegations as his other claims—the eggs came from "confined" hens. Compl. ¶ 77. As those claims fail, as discussed *supra*, this derivative unjust enrichment claim necessarily fails too.

DATED:  February 16, 2024

Respectfully submitted,

By: */s/   Jacob M. Harper*

DAVIS WRIGHT TREMAINE LLP

Jacob M. Harper *(pro hac vice)*
Heather Canner *(pro hac vice)*
865 S. Figueroa Street, Suite 2400
Los Angeles, CA  90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
jacobharper@dwt.com
heathercanner@dwt.com

Harris Kay, ISB # 6294732
Kimberly M. Bousquet, ISB # 232726
300 North LaSalle Street, Suite 2200
Chicago, IL 60654
Telephone: (312) 820-5130
Facsimile: (312) 820-5460
kimbousquet@dwt.com
harriskay@dwt.com


Attorneys for Defendant The Kroger Co.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2024, the foregoing was filed electronically. Notice of the filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: */s/ Jacob M. Harper*

Attorney for Defendant